[Sac. No. 6380. In Bank. Feb. 25, 1953.]

CALIFORNIA WATER, TRANSIT AND DEFENSE PROJECT (a Corporation), Appellant, v. CALIFORNIA TOLL BRIDGE AUTHORITY et al., Respondents.

Byers, Burd & Fraser for Appellant.

Edmund G. Brown, Attorney General, E. G. Funke, Assistant Attorney General, Ralph W. Scott, Deputy Attorney General, Robert E. Reed, and Orrick, Dahlquist, Neff & Herrington for Respondents.

SCHAUER, J.—This is a companion case to *Faulkner* v. *California Toll Bridge Authority, ante,* p. 317 [256 P.2d 659], our opinion in which has been this day filed. As in that case, plaintiff here appeals from a judgment entered on the sustaining without leave to amend of defendants' general demurrer to plaintiff's complaint. In this suit plaintiff seeks to have declared invalid the toll bridge revenue bonds more particularly described in our opinion in the Faulkner case, together with various resolutions of the defendant California Toll Bridge Authority, hereinafter termed the authority, and to enjoin the defendants[1] from proceeding with the construction of the proposed toll bridge between Richmond and San Rafael. We have concluded that the demurrer was properly sustained and that the judgment of the trial court should be affirmed.

In material substance the complaint alleges: Plaintiff is a nonprofit corporation, incorporated in this state; defendant authority adopted the various resolutions of September 26, 1952, and of November 7, 1952, which are more fully described in the Faulkner case (such portion of the resolutions as is particularly concerned in this case is hereinafter set forth), and on December 17, 1952, the authority ''readopted'' the four resolutions of November 7; bids for construction of the substructure and superstructure of the bridge were received and opened on December 19, 1952, by officials of the Department of Public Works, and that department intends to accept such bids prior to delivery of the Series A Bonds which were authorized by one of the November 7 resolutions; on December 29, 1952, the authority sold the Series A Bonds to four companies, including defendant Blyth & Co., Inc.; the bid of the four companies was the only offer to purchase the bonds which the authority received; the authority intends to deliver the bonds as soon as practicable to the four companies and thereafter construction of the bridge will begin.

The provisions of section 7.09 of one of the November 7 resolutions ''authorizing the creation of Richmond-San Rafael Toll Bridge Revenue Bonds and providing for the issuance of'' the Series A Bonds are the provisions upon which plaintiff

[1]Defendants who were named and have appeared herein are the California Toll Bridge Authority; the five individual members of the authority; Frank B. Durkee, as Director of the Department of Public Works of the State of California; and Blyth & Co., Inc., alleged to be a purchaser from the authority of certain of the toll bridge revenue bonds proposed to be issued to finance construction of the new bridge.

particularly relies. Those provisions are alleged in its complaint and are shown herein in footnote 2.[2]

Plaintiff further alleges that it intends to form a bridge and highway district pursuant to the provisions of the Bridge and Highway District Act (Sts. & Hy. Code, §§ 27000 to 27325), in order to construct an earth fill crossing across north San Francisco Bay (between the county of Marin and the county of Contra Costa) which will be within eight miles of the proposed toll bridge, will accommodate automobile and railroad traffic, and will "be financed by the issuance of bonds secured by tolls"; that defendant authority, in accordance with its agreement expressed in section 7.09 of its resolution (quoted hereinabove in footnote 2) that "it will not engage in, or so far as lies in its power permit" the construction of another crossing within eight miles of the new bridge, "will try to prevent Plaintiff from organizing" the bridge and highway district and "will try to prevent the construction of" the earth fill crossing by such district; that organization of the district will take "a great deal of Plaintiff's money and effort"; that in "order to develop the plans for said earth-fill crossing, Plaintiff has spent" over $10,000 and "has expended a great deal of effort over a period of time in excess of two years"; that if section 7.09 is valid and if it restricts the power of such a district "to construct a toll crossing in any location it desires, the money and effort expended in creating and developing the said plan for an earth-fill crossing . . . will be completely and absolutely

---

[2]Section 7.09 reads as follows: "*Competitive Facilities.* The Authority covenants and agrees that it will not engage in, or so far as lies in its power permit, the erection, construction or maintenance of any other vehicular or interurban railway bridge, subway, tunnel, barrier or other crossing, over, under, through or across San Francisco Bay between the County of Contra Costa on the one side and the County of Marin on the other side, *within a distance of eight miles from either side of the Bridge* [italics added], and will use its best efforts to prevent the granting of any franchise, for the operation and maintenance of any vehicular or passenger ferry or other similar means of crossing the said waters between the points aforesaid and within the limits aforesaid, so long as any of the Bonds are outstanding. The provisions of this Section 7.09 are in lieu of and in substitution for any similar provisions of law existing at the date of adoption of this Resolution; provided, however, that nothing herein contained shall prevent the construction of (a) any salt water or other barrier which does not provide for vehicular traffic thereon or (b) any salt water or other barrier providing for such vehicular traffic upon or over the rim or surface thereof, provided the Bonds issued or to be issued hereunder are either (i) secured by a first lien upon all revenues of such salt water or other barrier or (ii) are called for redemption and redeemed prior to the construction of such salt water or other barrier.''

wasted, the intention of Plaintiff to form a Bridge and Highway District will be completely thwarted and, consequently, plaintiff will suffer irreparable injury and damage. The eight-mile limitation [expressed in § 7.09] would prevent the construction of any crossing across north San Francisco Bay by any Bridge and Highway District organized by Plaintiff.''

Plaintiff's contentions appear to be, firstly, that the right of its proposed bridge and highway district to construct and finance a toll crossing under the authority of sections 27164, 27167, and 27171 of the Streets and Highways Code will be nullified if section 7.09 of the authority's resolution is valid, and, secondly, that by the 8-mile limitation expressed in such section 7.09 the authority has violated section 30354 of the Streets and Highways Code (which provide certain exceptions to the 10-mile limit within which section 30350 of that code prohibits the construction of a second crossing while revenue bonds against a prior crossing are outstanding and unpaid). Plaintiff asks that the court either declare invalid section 7.09 of the resolution or declare that the section applies neither to a bridge and highway district organized pursuant to the Bridge and Highway District Act nor to the earth fill crossing proposed by plaintiff; that the court further declare invalid the whole of the authority's four resolutions of November 7, 1952 (readopted December 17, 1952), authorizing creation and issuance of the revenue bonds, and declare the bonds invalid; and that an injunction issue restraining defendants from proceeding with construction of the Richmond-San Rafael Bridge and from taking any action to prevent plaintiff from organizing its proposed district or to prevent any such district from constructing the proposed earth fill. We have concluded that none of plaintiff's contentions is tenable and that the trial court correctly sustained the demurrer.

It is apparent from the provisions of section 30506 of the Streets and Highways Code that any right of a bridge and highway district to construct and finance the earth fill toll crossing sponsored by plaintiff cannot, insofar as the legal aspects thereof are concerned, be nullified by action taken by the authority by resolution or otherwise. That section specifically states that if after petition from such a district for authority to construct the crossing the authority ''refuses to authorize'' or ''does not within three years from the receipt of the petition authorize'' the construction, the district may construct such crossing ''subject to the limitations

of Article 7'' (the 10-mile limit, with exceptions). (See, also, Sts. & Hy. Code, §§ 30812, 30813.) Moreover, the authority does not purport, by section 7.09 of its resolution, to forbid, or place any legally binding restrictions upon, the efforts of a district to finance and construct the crossing advocated by plaintiffs, but only to refrain from engaging in, or ''so far as lies in its power'' from permitting, the construction so long as any of the Richmond-San Rafael Bridge bonds are outstanding. Since the authority is without power to place any legal impediment in the way of the construction, plaintiff's argument that its right to proceed with its proposed earth fill toll crossing will be lost if section 7.09 is valid, is without merit.

 In addition, it appears that the authority not only has not by section 7.09 of its resolution violated section 30354 of the Streets and Highways Code, but that it has acted within the powers conferred upon it by statute. Section 30354 provides, so far as here material, that the ''limitations and provisions'' of section 30350 do not apply to the construction of a highway bridge or other crossing between the county of Marin and the county of Contra Costa. Section 30350 states that ''As long as any of the bonds issued . . . for the . . . construction . . . of any toll bridge . . . are outstanding and unpaid, there shall not be . . . constructed . . . any other bridge . . . or other crossing over, under, through, or across the [same] waters . . . within a distance of 10 miles from either side of such bridge . . .'' By section 30353 of the same code it is declared that ''The provisions of Sections 30350 . . . are binding upon the authority, the State, all of its departments, agencies, or instrumentalities, any and all private, political, municipal, and public corporations and subdivisions, including cities, counties, and districts of any nature whatever. The prohibitions . . . restrict and limit the powers of the Legislature in respect to the matters mentioned in those sections as long as any such bonds are outstanding and unpaid and constitute a contract to that effect for the benefit of the holders of all such bonds.'' From the cited sections it is apparent that the purpose of the 10-mile limit with exceptions is to protect the holders of bonds outstanding against crossings to which the limit applies and to restrict the right of the various agencies named in section 30353 to impair such protection, and that it is not the purpose of such sections to forbid the authority from offering as an inducement to prospective purchasers of bonds the greater

protection of the 8-mile limit within which it agrees, under section 7.09 of its resolution, "that it will not engage in, or so far as lies in its power permit," construction of another crossing within a distance of 8 miles from either side of the proposed bridge. This view finds further support in the provision of section 30221, that "Whenever any bonds are to be issued pursuant to this chapter [the Toll Bridge Authority Act], the authority, from time to time, upon such terms and conditions in all respects as it approves and consistently with this chapter, may enter into indentures or agreements containing any or all of the following provisions . . . (d) Such other provisions for the protection of the holders of the bonds as the authority approves . . ." (See, also, §§ 30207, 30208, 30235.)

Inasmuch as the authority has not, by the provisions of the resolution here attacked by plaintiff, impaired any legal rights of a bridge and highway district to construct the earth fill crossing advocated by plaintiff, it becomes unnecessary to consider defendants' further contention that plaintiff does not have the legal power to create such a district. (See Sts. & Hy. Code, § 27022; *Golden Gate Bridge etc. Dist.* v. *Felt* (1931), 214 Cal. 308, 312-313 [5 P.2d 585].)

We can well understand that the practical effect of the authority's determination—which, of course, is the determination of the State of California—to construct the so-called high-level type of bridge at this time will probably, if not inevitably, make it more difficult for plaintiff and the many others who favor the earthen fill type of construction, to attain their objective. But inasmuch as the practical effect which it is asserted section 7.09 of the authority's resolution may have on the plans of plaintiff is not unlawful, such resolution cannot be held to be void. ▮ As we indicated in the Faulkner case it is to the California Toll Bridge Authority and to the Department of Public Works that the State of California has delegated the power and the duty to make the choices involved in such undertakings and upon the proceedings now before us the court may not properly concern itself at all with any question as to the wisdom of the determinations which such defendants have reached.

For the reasons above stated, the judgment is affirmed. Pursuant to stipulation of the parties, let the remittitur issue forthwith.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.